**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JENNIFER L. SMITH, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | No. 13-1411-JWL |
| CAROLYN W. COLVIN, ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.     Background**

Plaintiff applied for SSI, alleging disability beginning January 1, 2008. (R. 11, 136-39). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff presents two formal arguments, in which she alleges the Administrative Law Judge (ALJ) erred in his

credibility analysis and in evaluating and relying upon the vocational expert's (hereinafter VE) testimony.  Although Plaintiff's Brief presents only two argument sections, both the Commissioner and the court recognize another allegation of error imbedded within her credibility arguments--that the ALJ erred in evaluating the medical opinion of a non-treating physician, Dr. Kass, by ignoring or misrepresenting his medical diagnosis and by failing to specify the weight accorded to his opinion.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the decision, and after addressing one matter involving the conduct of Plaintiff's counsel, addresses each issue in the order presented in Plaintiff's Brief.

## II.     Ad Hominem Attacks on the Tribunal

In reading Plaintiff's briefs, it soon becomes apparent that counsel believes that the ALJ who handled this case has a predisposition to deny disability claims, and is biased against Plaintiff because she has abused substances in the past.  Counsel projects ill motives on the ALJ in this case, and casts unseemly aspersions on his handling of the case.  As but one example of this type of argument, the court quotes from the third page of counsel's credibility argument:

> Pointing to the most optimistic statement in a medical record at the expense of ignoring every other bit of relevant and substantial evidence seems to be a hallmark of review with some administrative law judges, this one included.  Indeed, Plaintiff stated a pain rating of 2-3, and this appears to be the prime determinant in making the pronouncement that:
>
> 1. She must be a liar regarding other reports of pain;
>
> 2. Her pain is insignificant;

> 3. The existing medical record supporting her allegations should be marginalized.
.

(Pl. Br. 19).

Counsel states that the ALJ ignored every contrary bit of relevant and substantial evidence, but he cites to no record evidence which was ignored and which would preclude the findings of the ALJ. In fact, in this instance, he admits that Plaintiff stated that her knee pain was a level of 2-3 on a scale of 1-10. Id. at 18-19.

Counsel notes that in the hearing the ALJ asked Plaintiff if alcohol and drug use ever got her into legal trouble, and that Plaintiff responded that it had not. He then states, "Plaintiff is confident that if there were any existing legal issues ALJ Harty certainly would have proudly heralded them before the Hearing [sic] or most certainly in the final opinion." (Pl. Br. 23). This type of argument continued in counsel's reply brief, wherein he stated, "ALJ Harty relies on the naked assumption that since [Plaintiff] had formerly abused methamphetamine, she certainly must be a contemporaneous liar and that nothing she says may be accepted or properly and completely incorporated into an assessment of residual functional capacity." (Reply, 2-3). It is true that the ALJ found Plaintiff's allegations of symptoms are not credible, and therefore did not credit many of her allegations. It is also true that the ALJ asked Plaintiff if her alcohol and drug use had caused legal problems, and he noted in the decision that Plaintiff "testified that she has not been in legal trouble based on alcohol use." (R.17). But, it will be demonstrated

5

herein when discussing the ALJ's credibility determination that the ALJ did not even rely upon Plaintiff's alcohol or drug use as a basis to discount her credibility.

Counsel assumes that because the ALJ asked the question and because he included statements regarding alcohol and drug abuse in the decision, that he found Plaintiff not credible, or at least implied that she was not credible because of that abuse.  However, the decision does not reveal such reliance, and it is necessary for an ALJ to question a claimant regarding, and summarize evidence of, drug addiction and alcoholism because the regulations require that if the Social Security Administration finds "that you are disabled and ha[s] medical evidence of your drug addiction or alcoholism, [it] must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 416.935(a).  Plaintiff admits to an "extensive substance abuse history and condition" (Pl. Br. 3), and it is that history which is recorded in the medical evidence, and which requires the ALJ to pursue the issue of drug addiction and alcoholism at the hearing and in the decision.

Counsel is cautioned that innuendo and <u>ad hominem</u> attacks on a court or other tribunal by a member of the bar are improper and unseemly.  If counsel believes the record supports a finding of bias or other impropriety by an ALJ, he should make those charges directly, and support them with evidence.  He should not merely imply impropriety as a tactic to seek reversal of an ALJ's decision.

**III.   Credibility Analysis**

Plaintiff argues that the ALJ improperly relied upon her minimal and sporadic performance of activities of daily living to discount her credibility; erroneously relied upon one report of a low level of pain to discount her other reports of extreme pain; and improperly relied upon evidence of past substance abuse to discount her credibility, without even inquiring as to the issue of abstinence. The Commissioner argues that the ALJ reasonably evaluated the evidence in considering the credibility of Plaintiff's allegations of symptoms. She argues that the ALJ may, and did, properly rely on the inconsistency between Plaintiff's daily activities and her claim of disabling symptoms, and that this inconsistency was but one of many factors the ALJ discussed in his credibility determination. She argues that the ALJ provided several reasons in his decision upon which he relied in discounting Plaintiff's credibility, including conservative treatment, improvement with treatment, inconsistent statements, daily activities, and the medical opinions. (Comm'r Br. 7).

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a

7

"loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating credibility, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 416.929(c)(3). Those factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 416.929(c)(3)(i-vii).

The court's review of an ALJ's credibility determination is deferential. An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir.

1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The court notes that there is no section of the decision at issue here dealing specifically with the credibility analysis, yet the ALJ began his RFC assessment with a summary of the standard applicable to a credibility determination, (R. 15), and he ended his RFC assessment by concluding that "the claimant's statements concerning the intensity, persistence and limiting effects of [her reported] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (R. 21) (emphasis added). Therefore, it is clear that the ALJ made a credibility determination, but the bases for it are not entirely clear. Moreover, an ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). And, a reviewing court may not create post-hoc rationalizations to explain the

Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  Therefore, the court has searched the decision to find the reasons expressly relied upon by the ALJ in discounting Plaintiff's allegations.

Although there is a section of the decision titled, "Subjective," that section provides only general information about Plaintiff, and contains no analysis by the ALJ suggesting that he discounted Plaintiff's credibility based upon that information.  (R. 15-16).  The ALJ recognized that Plaintiff testified regarding severe left knee pain, and he found that she has a severe impairment of the left knee.  (R. 13).   He also noted that Plaintiff "testified that she does not take pain medication for her knee."  (R. 16).  In the circumstances, the court concludes that the inconsistency between alleging severe knee pain, and testifying that she does not take pain medication for her knee is one basis the ALJ used to discount the credibility of Plaintiff's allegations of disabling symptoms.  The ALJ noted that Plaintiff had knee surgery in 2008 and continued to complain of constant pain thereafter.  (R. 16).  He noted that Plaintiff reported in 2010 that she had exacerbated her knee pain, and that she was "doing okay until that point when her pain became a 2-3 on a pain scale of 1-10 with 10 being the worst possible pain."  (R. 16).  He then provided another basis to discount the credibility of Plaintiff's allegations: "a pain level of 2-3 is not indicative of disabling pain and maybe [sic] the reason she does not take prescription pain medication currently."  Id.

As another reason to discount Plaintiff's allegations, the ALJ noted that Plaintiff complains of being fatigued, but that she has not reported excessive fatigue to medical professionals, and that these "inconsistent statements regarding her fatigue level diminishes the claimant's credibility." Id.  The ALJ also stated that Plaintiff's "activities of daily living are indicative of less limitation than she alleges." Id. at 17.  Finally, the ALJ found that Plaintiff "appears to exaggerate back pain." Id.  Thus, the ALJ relied upon five bases for discounting Plaintiff's allegations of symptoms.

Plaintiff's argument that the ALJ discounted her credibility merely because she had abused methamphetamine and marijuana in the past is not supported by the record.  In the decision, the ALJ noted Plaintiff's substance abuse.  He stated that Plaintiff "has been a 'meth' and marijuana user in the past." (R. 15-16).  He noted that Plaintiff "testified that she has not been in legal trouble based on alcohol use." (R. 17).  The ALJ noted that Plaintiff had been hospitalized after a planned suicide attempt in 2010, and he stated that "notes from Prairie View show the claimant reported she had used 'meth' and stayed up for several days when she thought about suicide (Exhibit F2, p.4).  The claimant testified that she quit all of it cold turkey and does not go to 'AA' or any other organization." Id.  The ALJ noted that Plaintiff was assigned a global assessment of functioning (GAF) score of 35 when she was hospitalized for "'meth' intoxication when her brother thought she was going to commit suicide." (R. 18).  He stated that "when the claimant stays off drugs and in treatment including medication, her condition improves." Id.

The ALJ also discussed the opinions of the medical and mental health treatment providers with regard to Plaintiff's drug and alcohol abuse. (R. 19-20). He noted that both a social worker and a registered nurse had diagnosed plaintiff with cannabis abuse and with methamphetamine or amphetamine abuse and he accorded those opinions "substantial weight." Id. at 19. In discounting the opinion of a physician's assistant, the ALJ relied in part on the fact that "the treatment notes from Prairie View show the longitudinal picture of claimant's mental health while off drugs and alcohol and in treatment including medication." Id. at 20. Finally, in according only "some weight" to the opinion of a non-treating psychologist, the ALJ noted that the psychologist had diagnosed Plaintiff with alcohol dependence and cannabis dependence in apparent remission. Id.

Each of these instances is supported by the record evidence, and Plaintiff does not argue otherwise. Each instance is a low-key, factual presentation, and in none of them does the ALJ suggest it as a basis to discount the credibility of Plaintiff's allegations. Moreover, as discussed above, when the medical evidence suggests drug addiction or alcoholism as it does here, the ALJ is required to consider that evidence and determine whether drug addiction or alcoholism is a contributing factor material to the determination of disability. The court finds no error in the ALJ's consideration of the record evidence regarding drug and alcohol abuse, and does not find that it was relied upon by the ALJ to discount Plaintiff's credibility.

Plaintiff is correct that the minimal and sporadic performance of activities of daily living are generally insufficient to support a negative credibility finding.  (Pl. Brief 17) (citing Cobb v. Astrue, No. 09-3079, 364 F. App'x 445, 450 (10th Cir. Feb. 4, 2010)).  However, as noted above, the nature of daily activities is a factor considered relevant in an ALJ's credibility determination both in the Tenth Circuit's formulation of the factors and in the regulations.  Kepler, 68 F.3d at 391; Thompson, 987 F.2d at 1489; 20 C.F.R. § 416.929(c)(3).  Here, Plaintiff's activities of daily living was but one of several factors relied upon in the credibility determination, and as in Cobb, the ALJ here did not state that Plaintiff's performance of daily activities "meant that she had the RFC 'to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Cobb, 364 F. App'x at 450.  Rather, he relied on her daily activities only for the proposition that those activities are an indication "of less limitation than she alleges."  (R. 17).  The court finds no error in such reliance on daily activities.

Finally, Plaintiff argues that is was error for the ALJ to rely upon a single instance wherein Plaintiff reported a low level of pain to discount all of her other reports of extreme pain.  Plaintiff acknowledges that she told Dr. Kass[1] that her pain was 2-3 on a 10 point scale, but argues that fact does not "automatically nullify other reports of pain." (Pl. Br. 19).  And, in her statement of the facts, Plaintiff acknowledged her testimony at the hearing that she does not take pain medication.  (Pl. Br. 7, No. 10) (citing R. 34).

---

[1]Plaintiff calls him Dr. Voss, but the note shows him to be Dr. Kass.  (R. 442).

13

However, Plaintiff does not cite to other reports of extreme pain or explain why in her view such reports should be accepted over her testimony that she does not take pain medication for her knee, or over her report to Dr. Kass that her knee pain, after exacerbation, was at only a 2-3 level. The point of the ALJ's finding in this regard is that Plaintiff admits not taking medication for her knee pain, and that she reported her knee pain level at 2-3 <u>after exacerbation</u>. These facts are inconsistent with other reports of extreme pain, and support the ALJ's determination that her allegations of symptoms are not credible. This is not error.

The remainder of Plaintiff's argument that the credibility determination is erroneous relies primarily on her reports or her testimony. The very purpose of the credibility determination is to determine whether Plaintiff's reports and testimony is to be fully believed, and Plaintiff has not shown evidence that precludes the ALJ's finding in this regard. Giving the credibility determination due deference, the court finds no error.

**IV.    Consideration of Dr. Kass's Medical Opinion**

Plaintiff claims the ALJ erred in weighing the medial opinion of a non-treating physician, Dr. Kass, both by ignoring or misrepresenting his medical diagnosis and by failing to specify the weight accorded to his opinion. The Commissioner argues that the ALJ's consideration of Dr. Kass's opinion was sufficient to make clear to the court his evaluation. She argues that the ALJ discussed Dr. Kass's findings favorably, that it is clear that he considered all of the opinion, and that even though he did not use Dr. Kass's

14

words to describe Plaintiff's knee impairment, he accepted that opinion and relied upon it in finding that Plaintiff's knee impairment is severe.

Plaintiff argues that Dr. Kass diagnosed Plaintiff with "patellofemoral degeneration with patellofemoral pain syndrome," but that the ALJ ignored this diagnosis although he "embraced" Dr. Kass's report that Plaintiff stated her knee pain was 2-3 out of ten. (Pl. Br. 19-20). She argues that because the ALJ did not list Dr. Kass's diagnosis among Plaintiff's severe medically determinable impairments at step two of the decision, "it is impossible to know whether or not the entirety of Dr. Kass' [sic] opinion has been properly recognized." (Pl. Br. 20). She argues that because the ALJ did not state the weight accorded to Dr. Kass's diagnosis, the decision is not clear in that regard. In her reply brief, Plaintiff acknowledges that the ALJ included "degenerative joint disease of the left knee" in his list of Plaintiff's severe impairments at step two, but she argues that the ALJ emphasized and relied upon this "generic and marginalized description" of Plaintiff's impairment and ignored Dr. Kass's diagnosis (or diagnostic terminology), and therefore, the court is unable to know the weight accorded to Dr. Kass's diagnosis. (Reply 1-2).

The court does not agree. As Plaintiff points out, an ALJ may not ignore any medical opinion, 20 C.F.R. § 416.927(c), and the "ALJ's decision [must] be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins v. Barnhart, 350 F.3d 1297, 1300

15

(10th Cir. 2003)). However, that standard is met here. It is clear that Dr. Kass's opinion was not ignored, it was relied upon by the ALJ in determining that Plaintiff has degenerative joint disease of the left knee as a severe impairment.

The evidence regarding Plaintiff's physical condition, and more specifically her left knee is rather sparse, but the ALJ accurately summarized that record. He noted that she had left knee surgery in February 2008, and that she continued to complain of pain in October, 2008. (R. 16) (citing Ex. 1F, p.6 (R. 284)). He noted that Plaintiff exacerbated her pain in October 2010 and that she reported a pain level of 2-3 at that time. Id. (citing Ex. F, p.6 (R. 441)).[2] The ALJ also summarized Dr. Kass's treatment of Plaintiff and an MRI performed in October, 2010 which was discussed in Dr. Kass's note:

> During an examination due to knee pain, Vello Kass, M.D., noted that the claimant is 5 feet 1 inch tall and weighs 264 pounds. He also noted that her BMI is over 49 (Exhibit 12F, p.7). Body Mass Index (BMI) is a measure of an individual's obesity. Indexes [sic] over 29 are considered to be in the obese range. An individual may have limitations in any of the exertional functions, postural functions, in her ability to manipulate objects, or to tolerate extreme heat, humidity, or hazards because of obesity. "[T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." (SSR 02-01p) The effects of the claimant's obesity have been considered when determining a residual functional capacity for the claimant. Dr. Vello [sic] gave her a brace, recommended an exercise program that she expressed she would follow. He also recommended an injection that she refused. The combination of obesity and left knee medical issues (analyzed below) supports that the claimant can lift no more than 20 pounds. Thus, she is limited to light exertional level work.

---

[2]"Exhibit F" does not identify any exhibit, but investigation reveals that the information cited here is from Dr. Kass's report of his treatment of Plaintiff on November 16, 2010. (R. 441-42). Moreover that note is correctly identified as Ex. 12F, p.6.

> An MRI of the claimant's left knee showed mild to moderate focal are[a] of marrow edema involving the anterolateral femoral condyle and irregularity of the lateral patellar cartilage. The findings were suspicious for a previous patellar dislocation and there was mild residual lateral subluxation of the patella and small knee joint effusion at the time of an emergency room visit for knee pain on October 28, 2010 (Exhibit 10F, p.4).

(R. 17).

From this record evidence as cited by the ALJ, there can be no doubt that it was Dr. Kass's diagnosis of "patellofemoral degeneration with patellofemoral pain syndrome" that lead the ALJ to find degenerative joint disease of the left knee as a severe impairment. Plaintiff asserts that the difference between the two diagnoses is so significant that it was error for the ALJ to use his own terminology rather than that of Dr. Kass. Yet, Plaintiff points to no record evidence suggesting that Dr. Kass's terminology cannot be included within the terminology used by the ALJ. And, she cites no admissible authority--medical, legal, vocational, or otherwise--suggesting such a significance. Moreover, and perhaps most importantly, at the hearing the ALJ listed his findings regarding medical diagnoses, including a "disorder of the left knee," but not including "patellofemoral degeneration with patellofemoral pain syndrome," and he asked, "Have I missed any diagnoses?" (R. 29-30). Plaintiff's counsel responded, "No, sir." Id. at 30. Thus, even if it was error for the ALJ to fail to include a diagnosis of "patellofemoral degeneration with patellofemoral pain syndrome," that error was invited by Plaintiff and may not be used to seek remand. Eateries, Inc. v. J.R. Simplot Co., 346 F.3d 1225, 1229

(10th Cir. 2003); John Zink Co. v. Zink, 241 F.3d 1256, 1259 (10th Cir. 2001).  The court finds no error in the ALJ's consideration of Dr. Kass's diagnosis.

## V.     Vocational Expert Testimony

Plaintiff claims the VE ignored Plaintiff's numerous environmental restrictions when she testified regarding jobs available to Plaintiff "because such matters are not encountered in the DOT [(Dictionary of Occupational Titles)]."  (Pl. Br. 24).  She argues that because the ALJ did not make a specific inquiry into the erosion of the sedentary job base resulting from particular restrictions, and because the VE did not comment on the impact of these restrictions, the analysis was deficient.  Id. at 25.  She argues that this is a "severely defective and even deceptive analysis" because it cannot be known if the environmental restrictions in the ALJ's RFC assessment were actually considered by the VE because the VE did not directly acknowledge the impact of each restriction.  Id.  The Commissioner argues that Plaintiff's presentation of this issue is without merit.  (Comm'r Br. 11-12).  She points out that the ALJ presented a hypothetical question to the VE which contained limitations and restrictions identical to those in the RFC assessed for Plaintiff, and that the VE testified that based upon those restrictions and limitations, an individual such as Plaintiff could perform work in the economy represented by jobs as a document preparer; wire wrapper; sealer; or production checker, woodworking.  Id. at 12.  She points out that the VE testified that her testimony was not inconsistent with the DOT, and that Plaintiff had no follow-up question of the expert, and argues that the ALJ justifiably relied upon the VE testimony.  Id.

As the Commissioner points out, the hypothetical question presented to the VE at the hearing is identical to the RFC assessed for Plaintiff in finding number four in the decision.  Compare (R. 15), with (R. 57-58).  And, the vocational expert testified that an individual with those limitations would be able to perform four representative sedentary occupations:  document preparer; wire wrapper; sealer; or production checker, woodworking.  (R. 58).  A hypothetical presented to a vocational expert is sufficient if it includes all limitations found by the ALJ.  Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000).  And, the VE's testimony in response to such a hypothetical may be relied upon by the ALJ.  Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993).

The fact that the DOT does not contain specific information regarding the impact of the particular environmental limitations included in this RFC on the jobs discussed by the VE does not require a different determination, for it is this very type of complex situation which is the basis for the ALJ to call upon the services of a vocational expert.  The regulations provide that an ALJ will take administrative notice of job data in the DOT and other relevant publications, 20 C.F.R. § 416.966(d), and that an ALJ may use the services of a VE or other specialist when determining complex vocational issues.  Id. § 416.966(e).  Plaintiff cites no authority for the proposition that an ALJ must ask a question regarding the erosion of an occupational base by a particular limitations, or that a VE must comment on the impact of a particular limitation on the availability of jobs in the economy.  And the court is aware of none.  Plaintiff has shown no error in the ALJ's reliance on VE testimony in this case.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 11th day of February 2015, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**